Judgment rendered April 9, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,115-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SUCCESSION OF
JOHN KELLEY MARTIN

* * * * *

Appealed from the
Eighth Judicial District Court for the
Parish of Winn, Louisiana
Trial Court No. 5840

Honorable Jimmie C. Peters, Judge (Ad Hoc)

* * * * *

| | |
|---|---|
| LAW OFFICES OF CHRIS L. BOWMAN<br>By: Chris L. Bowman<br>Colby L. Bowman | Counsel for Appellant,<br>John Kelley Martin, Jr.,<br>in his capacity as the<br>Testamentary Executor<br>and Independent<br>Administrator of the<br>Succession of John<br>Kelley Martin |
| McNEW, KING, LANDRY &<br>HAMMETT, LLP<br>By: April M. Hammett | Counsel for Appellees,<br>Lacey Elizabeth Martin<br>Martinez, Amy Sheree<br>Martin Box, and Marilyn<br>Ann Box Martin |

* * * * *

Before STONE, STEPHENS, and MARCOTTE, JJ.

**STEPHENS, J.**

This appeal arises out of the Eighth Judicial District Court, Parish of Winn, State of Louisiana, the Honorable Jimmie C. Peters, Judge, presiding.[1] The defendant, John Kelley Martin, Jr., has appealed from the trial court's judgment ordering, *inter alia*, that he be removed as testamentary executor and independent administrator and within 30 days, provide a full accounting to the Court and the parties of the decedent's assets at the time of his death in 2012. For the reasons set forth below, we affirm the trial court's judgment.

## FACTS/PROCEDURAL BACKGROUND

The decedent, John Kelley Martin, Sr. ("Martin, Sr."), was married twice. The defendant, John Kelley Martin, Jr. ("Martin, Jr."), was born of his father's first marriage.[2] Martin, Sr. then married Marilyn Ann Box Martin ("Mrs. Martin") on November 5, 1976, and together they had Lacey Elizabeth Martin Martinez ("Ms. Martinez") and Amy Sheree Martin Box ("Ms. Box"). Martin, Sr. and Mrs. Martin's marriage ended by a judgment of divorce rendered on March 15, 2010. At the time of Martin, Sr.'s death on September 9, 2012, all three children were competent adults over the age of 24 years.

On September 11, 2012, Martin, Jr., filed a "Petition for Probate of Will and Appointment of Testamentary Executor." He was appointed as executor and independent administrator of his father's succession that same

---

[1] Judge Peters was assigned as ad hoc judge to this matter by Order of the Louisiana Supreme Court dated January 27, 2020.

[2] As noted by the trial court in its "Reasons for Removal of Testamentary Executor," the records before the court do not establish how the first marriage ended.

date. At the time of Martin, Sr.'s death, he and Mrs. Martin had not completed partitioning their community property. Thus, Martin, Sr.'s estate was made up of undivided property of the former community (which necessarily meant that ½ of those assets and debts belonged or were attributable to the estate and ½ belonged or were attributable to Mrs. Martin) as well as the separate property of Martin, Sr. The succession also contained three businesses—J.K. Martin Pulpwood Company, Inc., which was the separate property of the decedent, and J-MART Enterprises, LLC, and JKM Trucking Company, Inc., both community enterprises, as well as numerous items of movable property and, according to Martin, Jr., was "heavily laden with debt." Almost ten years passed after this petition was filed, during which Martin, Jr., failed to take any significant steps to wind up the succession.

On June 10, 2021, the appellees, Ms. Martinez, Ms. Box, and Mrs. Martin, filed a "Motion to Remove Executor, to Appoint New Executor, and for Accounting." The appellees sought to have Martin, Jr. removed as executor and independent administrator and Ms. Martinez replaced pursuant to the terms of Martin, Sr.'s will. According to the appellees, after almost nine years of purported administration, the defendant had made no progress in even identifying the assets and liabilities of the estate, much less closing it in a timely manner. They further accused him of failing to safekeep the succession property, mismanaging it by failing to act as a prudent administrator and acting in bad faith as executor, failing to file an annual accounting, failing to timely file a detailed descriptive list, and failing to timely conclude the succession.

2

The motion filed by appellees was heard on November 10, 2021. After considering the evidence presented and documentation produced pursuant to court order, the trial court found that Martin, Jr., had not fulfilled his obligations as testamentary executor or independent administrator. The court granted the motion and removed Martin, Jr. from both positions, replacing him with Ms. Martinez; ordered Martin, Jr. to file a full and final accounting within 30 days of the judgment, a copy to be filed into the record and copies to be provided to all parties; and ordered Martin, Jr. to return all monies and property, "including but limited to the sale proceeds, rental income, control of any and all accounts containing property belonging to the succession of John Kelley Martin, Sr. and/or held in the name of the succession, any and all cash withdrawn from the deceased's accounts, and any and all other assets belonging to the estate of John Kelley Martin, Sr." The trial court's judgment was signed on April 23, 2024. It is from this judgment that the defendant, Martin, Jr., has appealed.

## DISCUSSION

Martin, Jr. claims that the appellees failed to meet the necessary burden to justify his removal. In *Succession of Houssiere*, 247 La. 764, 174 So. 2d 521 (1965), the Louisiana Supreme Court held that there must be "convincing evidence" of mismanagement to justify removal of an executor. The conduct in that case was the executor's use of estate funds to pay her attorney sons for succession work. The *Houssiere* court found that the executor's employment of her sons and approval of potentially excessive attorney fees was not convincing evidence of mismanagement to support a later challenge to justify removing her.

3

Martin, Jr. urges that the appellees' reliance on *Succession of Madden*, 53,353 (La. App. 2 Cir. 3/4/20), 293 So. 3d 665, *writ denied*, 20-00742 (La. 10/6/20), 302 So. 3d 535, is erroneous, as that case is not only factually dissimilar but is also clearly distinguishable from the instant case. Martin, Jr. points out these factual differences between *Succession of Madden* and the case before this Court. In *Succession of Madden*, *supra*, the estate was solvent. Also, the executor used the estate home as her own and failed to maintain it. Her delay in closing the succession ensured her continued use of the home, which had been left by testament to another legatee. Closing the estate would have resulted in the division and disposition of substantial cash assets. The executor also engaged in making a claim against the succession, running up exorbitant attorney fees, and refusing to place legatees in possession, among other acts of self-dealing.

Martin, Jr., also cites *Succesison of Fanz*, 19-0503 (La. App. 4 Cir. 1/29/20), 364 So. 3d 119, *writ denied*, 20-00738 (La. 9/23/20), 301 So. 3d 1154, a succession similar to Martin, Sr.'s as it also involved an executor facing the task of running an ongoing business concern. In *Succession of Fanz*, on the issue of removing the executor, the Fourth Circuit opined:

> Regarding the motion to remove Mrs. Fanz as business manager of FMHE, succession executor, and trustee, the trial court noted the evidence presented at trial revealed Mrs. Fanz could have done a better job at running the business, being more transparent as to business matters, and complying with accounting standards. However, the trial court determined there was no "conclusive" evidence that demonstrated Mrs. Fanz breached her fiduciary duties or stole money from the business. The trial court also noted many of Chuck's and Tammy's complaints regarding Mrs. Fanz's management of the business were "day-to-day business matters" that the trial court could not address.

*Id.*, 19-0503, p. 14, 364 So. 3d at 128. Martin, Jr., asserts that the appellees led the trial court to believe that he was intentionally mismanaging the succession for his own self-gain, but there was no indication of that. He concedes that he could have kept better records and been more transparent but that overall, his actions do not rise to the level of mismanagement as defined by Louisiana courts. There was no evidence of fraud, just speculation as to whether J. K. Martin Pulpwood benefitted from certain transactions to the detriment of entities in which other legatees had an interest. While admitting he is neither attorney nor accountant, the defendant suggests he has done his best to be fair to the other legatees at all times.

The defendant asks this Court to find that the appellees failed to establish that he mismanaged his father's estate by convincing evidence and thus the trial court erred in removing him as testamentary executor and independent administrator.

According to the appellees, the trial court correctly found that Martin, Jr. should be removed from his roles as testamentary executor and independent administrator. The evidence in this case was more abundant than that presented in the factually similar *Succession of Madden* case, urge the appellees. They also point out that the executor in that case was removed after just three years. In this case, Martin, Jr. has taken no steps toward protecting their interests or concluding the succession affairs for almost ten years. At the hearing in November 2021, the defendant admitted he didn't even file a detailed descriptive list. Because of his continued and egregious delays, some banking records aren't even available anymore.

The cases cited by Martin, Jr., are factually inapposite, urge the appellees. Unlike in *Succession of Fanz*, *supra*, there is ample evidence of gross mismanagement and poor decision-making that solely benefitted the defendant's interests. The testimony given by Martin, Jr. is overwhelmingly in support of the trial court's judgment in this matter. The appellees point out to this Court the absolute lack of evidence in support of much of Martin, Jr.'s testimony. This includes his allegations regarding the execution of personal guaranties by the decedent, company debts, and the valuations or appraisal values of the two company enterprises Martin, Jr. liquidated to keep in business the one entity that was the decedent's separate property left specifically to the defendant.

The appellees contend that the trial court's written reasons support the trial court's determination that Martin, Jr. failed to fulfill his fiduciary duties and was subject to removal. They urge the Court to affirm the trial court's judgment.

***Applicable Legal Principles***

The grounds for removal of a succession representative are set forth in La. C.C.P. art. 3182, which provides in part:

> The court may remove any succession representative who is or
> has become disqualified, has become incapable of discharging
> the duties of his office, has mismanaged the estate, or has failed
> to perform any duty imposed by law or by order of court.

*Succession of Dunham*, 408 So. 2d 888 (La. 1981). La. C.C.P. art. 3191(A) provides:

> A succession representative is a fiduciary with respect to the
> succession, and shall have the duty of collecting, preserving,
> and managing the property of the succession in accordance with
> law. He shall act at all times as a prudent administrator, and
> shall be personally responsible for all damages resulting from
> his failure to act.

6

Reading the two articles together, a succession representative cannot be removed because of a mere conflict of interest, but rather, it must be shown that he has mismanaged the estate or breached one or more of his required duties. *Id.*, 408 So. 2d at 899.

A party seeking removal of a succession representative must prove by convincing evidence that the representative either breached his fiduciary duty to the succession under La. C.C.P. art. 3191 or the existence of one of the grounds for removal under La. C.C.P. art. 3182. *Succession of Madden, supra*; *Succession of Dean*, 17-0155 (La. App. 1 Cir. 3/29/18), 247 So. 3d 746, *writ denied*, 18-00679 (La. 9/14/18), 252 So. 3d 479; *Succession of LeBouef*, 13-0209 (La. App. 1 Cir. 9/9/14), 153 So. 3d 527; *In re Succession of Keyes*, 13-1145 (La. App. 4 Cir. 1/22/14), 133 So. 3d 163.

A trial court is authorized to remove a representative only after such a showing is made. *Succession of Madden*, 53,353, p. 6, 293 So. 3d at 669; *Succession of LeBouef*, 13-0209, p. 10, 153 So. 3d at 534. Thereafter, the trial court is not required to remove the representative, but is vested with discretion in determining whether removal is appropriate under the facts of the particular case. *Succession of Cucchero*, 02-0368, p. 3 (La. App. 1 Cir. 2/14/03), 845 So. 2d 450, 452-53; *Succession of Krushevski*, 528 So. 2d 743, 744 (La. App. 4 Cir. 1988). The trial court's decision regarding removal of a succession representative will not be disturbed by the appellate court absent an abuse of discretion. *Succession of Madden, supra*; *Succession of LeBouef, supra*; *Succession of Cucchero, supra.*

As an independent administrator, Martin, Jr. did not have to seek court approval for the exercise of his duties on behalf of the succession. La. C.C.P. art. 3396.15 provides:

7

> Except as expressly provided otherwise in this Chapter, an independent administrator shall have all the rights, powers, authorities, privileges, and duties of a succession representative provided in Chapters 4 through 12 of this Title, but without the necessity of delay for objection, or application to, or any action in or by, the court.

Comment (d) to article 3396.15 provides:

> An independent administrator has all the rights, powers, authority, and privileges of other succession representatives but without the necessity of obtaining court approval to exercise them. These rights include the power to borrow money and incur obligations and secure such obligations by encumbering property of the estate, and to sell or exchange movable and immovable property upon such terms and conditions, and to do so for such a duration of time, as the independent executor, in his discretion, determines to be proper.

*However*, as comment (b) to article 3396.15 notes:

> This new approach should significantly reduce the time involved in administering an estate, as well as many of the legal fees and out-of-pocket costs incurred in administering the estate. Although the procedural rules are relaxed, the succession representative is a fiduciary and is responsible for his actions.

Quite simply, while Martin, Jr. did not have the requirement of court oversight of his every move as independent administrator of his father's succession, he nonetheless was held to the same standard of fiduciary duty and responsibility as other succession representatives. *See*, La. C.C.P. art. 3396.20.

As noted above, a succession representative is a fiduciary with respect to the succession and has the duties of collecting, preserving, and managing the property of the succession and has responsibility for damages. La. C.C.P. art. 3191(A). A testamentary executor and independent administrator are held to the standard of a prudent administrator, answerable to the trial court, liable for damages incident to his failure to act properly, and subject to

8

disqualification, revocation, or removal.  La. C.C.P. arts. 3097, 3181, and 3182.

This Court has likened the fiduciary duties of succession representatives to those of partners.  In *Scurria v. Hodge,* 31,207 (La. App. 2 Cir. 10/30/98), 720 So. 2d 460, *writ denied*, 99-0011 (La. 3/19/99), 739 So. 2d 782, discussing fiduciary duties in the analogous context of a partnership, the Court stated as follows:

> The relationship of partners is fiduciary and imposes upon them the obligation of the utmost good faith and fairness in their dealings with one another with respect to partnership affairs. Each partner must refrain from taking any advantage of another partner by the slightest misrepresentation or concealment of material facts. The obligation is especially stringent on a partner who is managing the business, his duty being analogous to that of a trustee.

*Id.*, 31,207, p. 6, 720 So. 2d 460 at 464, *citing W.A. McMichael Const. Co. v. D & W Properties, Inc.*, 356 So. 2d 1115, 1122 (La. App. 2 Cir. 1978), *writ denied*, 359 So. 2d 198 (La. 1978).

In its "Reasons for Removal of Testamentary Executor" (hereinafter "written reasons"), the trial court specifically stated that the matter was not to question the defendant's ***authority*** as executor and independent administrator but his ***failure to move the succession toward completion***. However, in the course of analyzing what Martin, Jr. did during the time between the opening of his father's succession in October 2012 and the hearing in November 2021, the trial court had to examine, to the best of its ability, given the fact that the defendant was the source of most of the evidence showing what was and wasn't done in the administration of the succession, whether Martin, Jr.'s actions and/or failures to act were those of

9

a prudent fiduciary.  The following is taken from the trial court's detailed written reasons in support of its judgment:

> This court recognizes that as an independent administrator, Mr. Martin, Jr. need only file a detailed descriptive list to close the succession, obtain a judgment of possession, and/or be discharged as independent administrator…
>
> [W]hile an independent administrator need not meet the timelines of a normal administrator or executor in filing a detailed descriptive list, his or her need for keeping unquestionably accurate records on his or her activities is all the more important—because *at some point, all succession representatives are going to have to produce evidence of the succession assets and liabilities at the time of the death of the testator*. In this case, *the detailed descriptive list produced by Mr. Martin, Jr. clearly establishes that he has no idea of the complete nature of the assets and liabilities he assumed administration of and has no records to accurately reproduce that listing*.  *In other words, he failed to collect, preserve, and manage the property entrusted to him*.  *See*, La. Code Civ. P. art. 3191(A).
>
> *Evidence of this failure to function as a prudent administrator from the very beginning* is clearly present in the detailed descriptive list.  Mr. Martin, Jr. filed in these proceedings.  He did not initially collect, preserve, or manage the property placed in his care.  His detailed descriptive list identifies over sixty-seven items of property belonging to his father's estate at the time of his death. (JMart Enterprises, LLC, JKM Trucking, Inc., thirty-three guns, J.K. Martin Pulpwood, Inc., a safe with unknown contents, and over thirty items of movable property located at a camp new (sic) Goldonna, Louisiana) which to this day he has not valued for estate purposes.  At the same time, he listed over one hundred items of movable property purportedly in the possession of Mrs. Martin, and had the value of those items down to the penny.
>
> *Furthermore, Mr. Martin, Jr. classifies the property in his detailed descriptive list as either community or separate property.*  The problem with those classifications is that the community estate was terminated when the divorce judgment [terminating the marriage of Martin, Sr. and Mrs. Martin] was signed on March 15, 2010, or over two years before Mr. Martin, Sr.'s death.  From that point forward, Mr. Martin, Sr. and Mrs. Martin each owned an undivided [one-half] interest in each piece of property that had *previously* comprised the community of acquets and gains between them.  In other words, at the time of his death, *Mr. Martin, Sr. owned no community property—*

*just an undivided one-half interest in what had been the community property*.

While there are more questions than answers raised by Mr. Martin Jr.'s detailed descriptive list filing, one last problem apparent on the fact of the filing should be noted. On the one hand, *Mr. Martin, Jr. classifies J.K. Martin Pulpwood, Inc. as the deceased's separate property, but then classifies all of the debt belonging to that corporation as community debt*.

*The interim account, which Mr. Martin, Jr. refers to as an ANNUAL ACCOUNT, is equally deficient.* He simply reasserts most everything he listed in the detailed descriptive list with the same values asserted over nine years ago as being the current value, details the simple transactions, and leaves blank the more complicated transactions.

*Additionally, the misunderstanding of what constitutes community property carries over into the interim account as well.* The first thing one notices that Mr. Martin, Jr. did sell the three aforementioned vehicles after advertising and obtaining court approval of the sales. The problem is that *Mr. Martin, Jr. lists those sales in the interim account as being sales of community property.* As previously stated, *the deceased only owned an undivided one-half interest in the vehicles, and the executor had no authority to sell Mrs. Martin's undivided one-half interest regardless of the classification.*

Another questionable disposition by the executor is *the sale of the camp on Saline Lake near Goldonna, Louisiana. That camp is carried on both the detailed descriptive list and the interim report as community property yet the administrator sold the property for $115,000.00 in October of 2012 without regard to the fact that he had no authority to sell Mrs. Martin's undivided one-half interest in that property.*

Perhaps even more troubling is the way the dissolution of J-Mart Enterprises, LLC and JKM Trucking, Inc. was handled by the executor. *Both of these entities were carried as community property on the detailed descriptive list, but were dissolved in their entirety by the executor without any input from the alleged one-half interest owner, Mrs. Martin.* Additionally, *it appears that the one entity that benefited from the dissolution was J. K. Martin Pulpwood, Inc.—the entity which Mr. Martin, Jr. will ultimately inherit in full ownership*.

*[N]ot all successions lend themselves to a streamlined procedure, and the built-in safeguards associated with the ordinary succession proceedings are sometime necessary to protect the succession representative as well as the heirs and legatees.* Each succession must be evaluated on its individual

merits to determine whether the independent administrator concept is the most appropriate method of handling a particular estate. In other words, trading transparency for efficiency is not always a good policy; and a decision on which procedure should be used depends largely on the nature of the estate itself and the ability (and sometimes the good faith) of the proposed independent administrator. ***This is particularly important when the independent administrator has a vested interest in the estate that is in direct conflict with the interests of the others involved.***

One of the pitfalls in the independent administrator procedure is the fact that the individual accepting the responsibility does not fully under the legal consequences of some actions or inactions, and unless he and she is in close touch with a legal advisor, problems can arise without warning. ***In this case, Mr. Martin, Sr.'s estate is extremely complicated. It is comprised of property he owns individually and property he owns in indivision with his former wife. His estate is in litigation with his former wife over some of the very property the independent administrator is trying to divide. A large portion of the value of the estate is found in three closely held business [entities] which have significant debt and require experienced hands-on operators to keep them moving forward and servicing the debt.*** Many movable items of estate property require the assistance of professional appraisers to establish value … Also, the estate has movable property that has been in storage for over nine years.

***The court does not question Mr. Martin, Jr.'s good intentions in administering this estate. However, it appears he chose to do it alone and did not seek basic information that would have reduced the time in the process considerably. Because of a lack of basic information between he and his sisters and stepmother, today we still do not know what property is owned solely by the estate and what is co-owned between the estate and Mrs. Martin. Additionally there is no record of any claims Mrs. Martin might have against aspects of the estate based both on her previous community ownership and her individual claims for reimbursement from Mr. Martin, Sr.'s individual estate.*** (Emphasis added).

The appellees clearly bore their burden of establishing by convincing evidence that Martin, Jr. did not fulfill the duties and obligations he owed the succession as its testamentary executor and independent administrator in a competent or timely manner. Although not explicitly phrased as such, the actions and inactions of Martin, Jr. described by the trial court in its written

reasons cumulatively constituted a breach of his fiduciary duties as succession representative under La. C.C.P. art. 3191(A). The trial court did not abuse its discretion in removing Martin, Jr. as testamentary executor and independent administrator. The record supports the trial court's factual findings and ultimate determination in this case.

## CONCLUSION

For the reasons set forth above, the judgment of the trial court is affirmed. Costs of this appeal are assessed against the defendant, John Kelley Martin, Jr.

**AFFIRMED**.